## Case No. 153.
### ALDEN v. DEWEY.
[1 Story. 336;[1] 2 Robb, Pat. Cas. 17; 3 Law Rep. 383; Merw. Pat. Inv. 649.]

Circuit Court, D. Massachusetts. Oct. Term, 1840.

PATENTS FOR INVENTIONS — INFRINGEMENT—SUBSTANTIAL DIFFERENCE — SUGGESTIONS—ORIGINALITY.

1. In an action for an infringement of a patent right, evidence that the invention of the defendant is better than that of the plaintiff, is improper, except to show a substantial difference between the two inventions.
[Cited in Agawam Woolen Co. v. Jordan, 7 Wall. (74 U. S.) 603; Sewell v. Jones, 91 U. S. 184, 9 O. G. 49.]

2. Where the defendant offered evidence to show, that the invention was not original with the plaintiff, but that the improvement, for which he had taken out letters patent, had been suggested to him, although the precise mode of carrying it into operation had not been suggested; the court instructed the jury, that the true question was, whether the improvement was substantially communicated to the plaintiff, so that, without more inventive power, he could have applied it, or not.
[Cited in Allen v. Blunt, 'Case No. 217; Watson v. Belfield, 26 Fed. Rep. 539.]

3. In considering the question of the originality of an invention. the oath of the inventor, made prior to the issue of the letters patent, that he was the true and first inventor of the improvement, may be opposed to the oath of a witness in the case. whose testimony is offered to show, that the invention was not original.
[Cited in Woodworth v. Rogers, Case No. 18,018; Worswick Manuf'g Co. v. City of Kansas, 38 Fed. Rep. 250; In re Wagner, Case No. 17,038.]

[4. Cited in Allen v. Blunt, Case No. 217, to the point that a verdict for damages in a patent case should not be set aside because of the court's opinion that a less amount should have been awarded, if it appears that the matter was submitted to the fair judgment of the jury.]

At law. This was an action for an infringement of a patent right for an improvement in scythe snathes. The original patentee was Dexter Peirce, who took out letters patent, March 11th, 1837, (No. 144.) He afterwards assigned his right and interest under these letters patent to several persons, who again assigned to the plaintiffs in the present case. The special improvement, which formed the subject matter of the present suit, was described in the claim as follows: "What I claim as my own invention and not previously known, and desire to secure by letters patent, is my constructing the nib or thole irons and woods, so as by the extension of the iron beyond the wood, with a screw and nut to regulate and fasten the nibs or tholes in any situation desirable on the snead." Before the patent of Peirce, the nibs of scythes had been clumsily fastened to the snathe by means of an iron ring, tightened by wedges. These wedges were easily loosened by the use of the scythe. The defendants manufactured and sold a large number of nibs, which were secured to the snathe by a ring at the end of an iron stem. This stem passed through the wood of the nib, was threaded at the top, and fitted into a nut, which was adjusted in the end of the wood. The wood moved in a brass cellar. which was at the bottom, and being turned by the hand, operated as a wrench upon the nut, and was pressed upon the scythe snathe; and in this way the nib was secured and regulated in any situation, desirable on the snead. The nib used by the defendants, is usually known as Clapp's method or improvement. It was contended, by the plaintiffs' counsel, that this was substantially the same with the improvement of the plaintiffs. Several witnesses were examined, as experts, who testified, that the two differed in certain particulars and details, but that they were the same in principle. For the defense it was urged, that the plaintiffs could not have an exclusive right to the use of the screw for purposes of fastening. But it was answered, .that the claim was not for this element, but simply for a combination, into which it entered; and this view was sustained by the court. It was also urged, that the two nibs were unlike; and that the nib of the defendants was not an infringement of the right of the plaintiffs. No witnesses were called to this point by the defendants. Evidence was given to show, that the nib of the defendants was better than that of the plaintiffs, and that it found a readier market. But the court instructed the jury to disregard this consideration, except so far as it went to show a substantial difference between the two nibs. It was no matter, if the defendants' nib was more polished, or even worked better than the plaintiffs', provided it embodied the principle of the plaintiffs'. It did not follow, because the defendants improved the machine of the plaintiffs, that, therefore, they could use it. Another defense was set up, which received particular attention from the court. Daniel Draper testified, that, in conversation with Dexter Peirce, the patentee, sometime at the end of the winter, or beginning of the spring of 1835, he remarked, that he found great difficulty in suiting his customers, in respect to the nibs of scythe snathes; and that he thought they might be improved by the application of the nut and screw to the nib or thole. He did not suggest any mode of doing

[1][Reported by William W. Story, Esq. Merw. Pat. Inv. contains partial report only.]

this. He never reduced his idea to practice. The witness said, that Peirce treated the idea as impracticable, and laughed at it. It appeared on cross-examination, that the witness had been, in the early part of his life, a tanner, and then went into the patent wood ware business, in which he continued till January 1, 1835, when he formed a copartnership with another person for the manufacture of hammers and scythe snathes; but that he did not continue to make snathes more than six months. The witness knew, that Peirce took out a patent, in March, 1837, for his improvement in the scythe snathe, and that he had assigned the same for a valuable consideration; but he never spoke to him on the subject, or reminded him of the suggestion he had made, though he was in the habit of seeing him from time to time.

Fletcher and Charles Sumner, for plaintiffs.

B. Rand and B. R. Curtis, for defendants.

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice, on these facts, submitted to the jury this question: Did Draper communicate to Peirce substantially the improvement, for which he took out his patent, so that, without more inventive power, Peirce could have applied it? It was not enough, that Draper gave a hint; nor, on the other hand, was it necessary, that he should communicate every minute thing about the invention; but he must have communicated the substance. He further instructed the jury, that the original patentee had sworn, that he was the true and first inventor of the improvement, for which he had taken out letters patent; that this oath was required by law, prior to the issue of the letters patent; so that, supposing the jury should be of opinion, that the asserted communication of Draper covered the substance of Peirce's invention, then there would be oath against oath. If they should be of opinion, that Draper simply gave a hint, which Peirce afterwards reduced to practice, then the two oaths would not conflict. If Peirce swore falsely, that he was the first and true inventor, then he was liable to indictment for perjury. The testimony of Draper with regard to Peirce was in the nature of confessions, and this was always regarded as an uncertain kind of evidence. The conversation was in private, and nobody could contradict the witness. The judge stated, that this was the first time, within his long experience on the bench, that such a conversation had been set up as a ground for destroying the title of a patentee to his invention.

The judge further instructed the jury, that it was not necessary, that the two nibs should be identical, in order to make one an infringement of the other. The true question was: Are the means used substantially the same. although not in every minute particular? With regard to damages, the jury were told not to give extravagant or vindictive damages; but such as would establish the right of the plaintiffs, and indemnify them against all the expenses of litigating their right. If the defendants were sued a second time for violating the right of the plaintiffs, then it might be proper to give vindictive damages. The jury thereupon found a verdict for the plaintiffs, for $1167.66.

At a subsequent day of the term, (Dec. 21,) the case came on again. on a motion for a new trial. The motion was grounded upon the following reasons. (1.) That the judge ruled. in the course of the trial, that one Peirce, who was offered as a witness, was interested, and could not be examined as a witness. (2.) That the judge further ruled, that an affidavit, made by the said Pierce, before he took out his patent and in order to obtain the same, was evidence in the cause, although it appeared, that the said Peirce was interested at the time he made the said affidavit. (3.) That the judge instructed the jury, that they were to take into consideration the said oath of Peirce, and that only one witness having sworn, that he communicated to Peirce the substance of the invention, and Peirce having sworn by his said affidavit, that he believed himself to be the original inventor, the jury had oath against oath; and that the jury must decide, whether the solemn oath of Peirce had been thus overcome by the testimony of one witness. (4.) That the damages assessed by the jury were excessive.

B. R. Curtis urged, in support of the first three grounds of the motion, that the ruling of the court was inconsistent with the general principles of the law of evidence; that it conflicted with the rule, requiring an opportunity to cross-examine a witness; also, with the other rule, excluding the testimony of an interested witness. In support of his views, he cited the English cases in actions on the case for a malicious suit. He also relied upon the proceedings of courts of justice under the registry laws, and bankrupt laws. He further urged, that the statute, requiring the oath of the patentee, was intended to secure the public against fraud. But that, if the construction of the court was to prevail, it would operate as a security to the patentee, and would be, not a shield to the public, but a sword against it. He also argued, in support of the last ground of the motion for a new trial, that the damages were excessive.

STORY, Circuit Justice, without hearing the other side, ruled, as at the trial, that the patent was prima facie evidence in the case; that the patent recited the oath, and that the jury had cognizance of it; in short, that the oath was in the case, and the jury were entitled to judge of its force. This was the foundation of the onus probandi, that was thrown upon the defendants in a patent cause. The courts

of the United States had constantly acted upon this view. With regard to the question of damages, the judge confessed, that the damages awarded by the jury were greater than were anticipated. But still there did not seem to be any such gross mistake in the jury, as would authorize setting aside their verdict. It was a matter submitted to their fair judgment. Judgment according to the verdict.

[NOTE. Patent No. 144 was granted March 11, 1837, to D. Peirce, and, so far as ascertained, has not been involved in any other cases reported prior to 1880.]